## *In re* BURROW.

Decided January 2, 1892.

1. *County prisoners—Qualifications of contractor.*

*It seems* that the statute regulating the hiring out of county prisoners does
not intend to make a previous residence in the county an indispensable
qualification for becoming a county contractor, but does intend that the
contractor shall keep and work the prisoners in the county where they
have been convicted, except where the county court is unable to make a
contract with any person in its own county.

2. *Contract for keeping prisoners—Judgment.*

Under the statute which provides that the county court may make a contract
for the hire of the county prisoners with the contractor of another county,
where it is unable to make a contract with any person in its own county
(Mansf. Dig., sec. 1245), the recitals of the record of such court that the
person with whom a contract was made is the contractor of another county
have the force of a judgment *in rem* and cannot be questioned collaterally.

APPEAL from *Pulaski* Chancery Court.

DAVID W. CARROLL, Chancellor.

*N. F. Lamb* for petitioner.

*J. W. House* for Craighead County.

*John M. Moore* for respondent.

MANSFIELD, J. The petitioner, A. V. Burrow, was con-
victed of a misdemeanor before a justice of the peace of

Craighead county, and, having failed to pay the fine and costs adjudged against him, he was commited to the jail of that county, pursuant to a provision of the criminal code. Mansf. Dig., sec. 2318. Thereafter an order was made by the Craighead county court, under sectibns 1226 and 1227 of the Digest, directing that the county prisoners be hired out, and directing the publication of an advertisement for proposals to keep and work them. In the same court an order was subsequently entered, reciting that the advertisement had been duly published, and that no proposals had been received in response to it; that the court had been unable to make a contract with any person in the county for keeping the prisoners, and that it was "to the best interest of the county to make a contract for that purpose with a contractor of some other county." The order then proceeds with an additional recital in the following language : " And J. C. Cross, the county contractor of the county of St. Francis, comes here in open court and proposes to enter into such contract, which is in words and figures as follows." Following this last recital the record sets out in full a contract purporting to be made " between the county court of Craighead county   *   *   *   of the first part, and James C. Cross, a county contractor of St. Francis county,   *   *   * of the second part," and containing the stipulations required by the statute in contracts for the keeping and working of county prisoners. The contract is signed by the county judge and by Cross as contractor, and is followed by an order of the court approving it. Under this contract and by the court's direction, the sheriff of Craighead county carried Burrow, as one of the county prisoners, to the city of Little Rock, and there delivered him into the custody of Cross, who it is admitted resides in Pulaski county. Burrow afterwards filed in the Pulaski chancery court his petition for *habeas corpus*, alleging that he was illegally restrained and confined by Cross under the contract referred to, and that Cross was not, at the time the contract was made, the county contractor or lessee of the county prisoners of St.

Francis county, or of any other county of this State. The
writ was issued, and Cross filed a response thereto, stating
that he held and detained Burrow by virtue of the commit-
ment of the justice before whom Burrow was tried and under
his contract with the county. He also stated that, at the
time that contract was executed, he was working the con-
victs of St. Francis county under a contract between him-
self and the judge of the county which the county court
had since approved and ratified. The contract with St.
Francis county and the order ratifying it are made part of
the response. The cause was heard on the petition, response
and exhibits, and this appeal is prosecuted from a judgment
remanding the petitioner to the custody of the respondent.

The appellant contends that the contract under which he
is held is void, and that he is therefore entitled to be re-
leased from the custody of the respondent. The ground on
which the invalidity of the contract is insisted upon is that
the appellee Cross was not capable of becoming the lessee
of the prisoners of Craighead county for the reason that he
was neither a resident of that county nor the contractor for
keeping the prisoners of any other county.

Section 1226 of the Digest is as follows: "The county
court is hereby authorized and empowered to make a con-
tract with some responsible person or persons for the main-
tenance, safe-keeping and working of persons committed to
the county jail, and for the purpose of making such con-
tract and for carrying out the provisions of this act said
county court shall have full and plenary powers." Section
1227 provides that when it shall be deemed advisable to
enter into such contract a notice that proposals for keeping
the prisoners will be received shall be given by advertise-
ment in some newspaper printed in the county, and if no
such paper is published there, then by posting notices at ten
public places in the county for thirty days. The same sec-
tion directs that a contract shall be closed with the person
who shall undertake the duties imposed by the statute upon
terms most advantageous to the county, and requires such

1. Qualifica-
tions of county
contractor.

person to enter into a bond to the State conditioned that he will faithfully comply with the terms of his contract. But it expressly provides that the county judge may reject all proposals thus received. By section 1238 it is made the duty of the sheriff to examine into the condition of prisoners in the custody of the contractor, and to see that they are treated with humanity and furnished with sufficient clothing and wholesome food, and that they receive proper medical attention. And if he believes there is a default in this respect, he is required to file written charges against the contractor in the county clerk's office on which a summons is to be issued, warning the contractor to appear and show cause why the contract should not be cancelled. Section 1239 provides that the court shall investigate such charges and may render judgment cancelling the contract or make such further order for securing the proper treatment of the prisoners as may seem to be proper. And section 1242 empowers the county judge to institute like proceedings against the contractor upon his own knowledge or the information of others. Section 1245 contains the following provision: "In case the county court is unable to make a contract with any person in the county, as provided in section 1226, the court may contract for the work of its prisoners with the contractor of any other county, according to the provisions of this act." These sections are all provisions of the same act, and are to be construed together in arriving at the intentions of the legislature, if indeed the language of either of them can be said to be ambiguous. *Van Horne* v *State*, 5 Ark., 349; *Trapnall*, ex parte, 6 Ark., 13; *Wilson* v *Biscoe*, 11 Ark., 44; *Kelly's Heirs* v *McGuire*, 15 Ark., 555; *Scott* v *State*, 22 Ark., 369. By transposing some of the terms employed in the first clause of section 1245, it may be made to read as follows: "In case the county court is unable to make a contract, as provided in section 1226, with any person in the county, the court may contract for the work of its prisoners with the contractor of any other county, according to the provisions of this act." This reading of section 1245 is, we

think, consistent with its meaning; and as thus read the words "as provided in section 1226" do not relate to the person to be contracted with, but merely indicate that a contract made under that section is to be of the nature provided for in section 1226. We cannot see that the statute intends to make a previous residence in the county an indispensable qualification for becoming a contractor. But our opinion is that it does intend that the contractor shall keep and work the prisoners in the county where they have been convicted except in the contingency provided for in section 1245. This interpretation is, we think, warranted, not only by the language of section 1245, but also by the provisions contained in sections 1238–1242. These show that the legislature contemplated an inspection by the sheriff such as that officer could not be expected to make unless the prisoners are kept in his own county. Nor could it have been reasonably supposed that the county judge would ordinarily have such personal knowledge of the condition of convicts kept in another and perhaps remote county as would enable him to take, upon his own motion, the action provided for in section 1242. Both of the officers mentioned are charged with such duties, looking to the protection of prisoners against ill treatmant, as indicate an intention to have them kept in the county where they are convicted when a just and proper contract for that purpose can be made.

The record shows that the county court of Craighead county was unable to make a contract for keeping and working the prisoners of that county within its own borders. And the appellee does not contend that the statute permitted any other contract except such as was authorized by section 1245. But the appellant contends that, although the contract under which his restraint is justified was entered into under that section, the appellee was not a person with whom the Craighead county court could lawfully contract, for the reason that he was not then the legal contractor for keeping the prisoners of St Francis county, and

2. Contract for keeping county prisoners is in the nature of a judgment.

does not claim to have been the lessee of any other county. The appellee's contract with the St. Francis county court recites that he was a resident of Pulaski county; and if, as may be inferred from one of the stipulations of that contract, the prisoners received under it were to be kept in the latter county, it was in that respect unauthorized by the statute. Whether it was for this reason void, it is not necessary to inquire. The original contract was made with the county judge in vacation, and not with the court, and that fact was sufficient to avoid it, according to the ruling of this court in *Greer* v. *Critz*, 53 Ark., 247. But whether the appellee was the contractor of St. Francis county at the time he entered into the contract under which the appellant is held, was a question necessarily submitted to the Craighead county court by Cross's proposal to become its lessee. The recitals contained in the record of that court show that it found and adjudged that Cross was such contractor, and the correctness of its judgment cannot be questioned collaterally. It is apparent that the judgment by which Cross became the contractor of Craighead county was erroneous. But it was rendered in the exercise of a jurisdiction that is not questioned, and while it remains in force it is as binding and conclusive as it would be if it were without error. *Holmes* v. *Oregon, etc., R. Co.*, 9 Fed. Rep., 229, and cases cited. The appellant was not, it is true, a party to the proceedings in the county court and could not have become a party. But the action there had was so far in the nature of a proceeding *in rem* that the appellant is concluded by it to the same extent as if he had been a party. Whether the law affords him a remedy by a direct proceeding to vacate or avoid the judgment on which the contract with the appellee rests, we do not decide. The judgment is valid on its face; and while it stands, the restraint of the appellant under the contract is not unlawful. He can have no relief against a violation of the contract on *habeas corpus*. The order of the chancellor remanding him to the custody of the appellee must therefore be affirmed. *Jackson, ex parte*, 45 Ark., 158;

*Brandon, ex parte,* 49 Ark., 143; *Barnett, ex parte,* 51 Ark., 215; Mansf. Dig., secs. 3570-3572.

By the proceedings of the St. Francis county court, exhibited with the appellee's response, he has now probably become the lawful contractor of that county. And if the appellant is aggrieved by being kept in Pulaski and not in St. Francis county, we suggest for the consideration of his counsel whether redress as to such grievance may not be obtained on complaint made to the county court of Craighead county.

COCKRILL, C. J., did not sit in this case.